IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CORNELL F. DAYE,

    **Plaintiff,**

v.                                                                      Civil Action No. 1:13cv227
                                                                         (Judge Keeley)

**DAVID PROCTOR, Doctor,**
**Dr. MARK BAKER,**
**TRISTAN TENNEY, Medical Administrator,**
**DEBBIE HISSOM, Medical Director,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

Plaintiff initiated this case on October 10, 2013, by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983, against the above-named Defendants as well as Adrian Hoke, Marvin C. Plumley, and Jim Rubenstein together with a Motion for Injunction/Temporary Restraining Order and a Motion for Declaratory Judgment.[1] On June 17, 2014, the undersigned issued a Report and Recommendation which recommended that Adrian Hoke, Marvin C. Plumley and Jim Rubenstein be dismissed because it appeared that the Plaintiff had named them only in their official capacity and there was no allegation by the Plaintiff to support a finding that the WVDOC had a policy or custom that played a part in the alleged violation. In addition, the undersigned recommended that the Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order be denied, as well

---

[1]The Clerk of Court received one complaint from Cornell Daye and one complaint from Tyrone Rogers on October 10, 2013 in separate envelopes. However, each Plaintiff submitted identical memoranda in support including exhibits. In addition, Mr. Daye and Mr. Rogers submitted identical Motions for Injunction/Temporary Restraining Order and Motion for Declaratory Judgment which were signed by both.

as his Motion for Declaratory Judgment. However, the undersigned recommended that the claims against David Proctor, Tristan Tenney, Mark Baker and Debbie Hissom proceed and those defendants be served with a copy of the summons and complaint.

On July 1, 2014, Plaintiff filed objections to the Report and Recommendation. On July 22, 2014, the Court entered a Memorandum Opinion and Order Adopting Report and Recommendation and overruling Plaintiff's objections to the same. Accordingly, Plaintiff's claims against Hoke, Plumley and Rubenstein were dismissed with prejudice. Plaintiff's claims against Hissom, Proctor, Tenney and Baker were permitted to proceed, and on July 22, 2014, a sealed summons was issued for each of the remaining four defendants. The summonses for Hissom, Proctor and Tenney were served on July 25, 2014. The summons for Baker was returned on August 1, 2014, unexecuted. On August 15, 2014, a Motion to Dismiss with memorandum in support was filed on behalf of Proctor and Tenney. No response has been filed by Hissom. On September 2, 2014, a Roseboro Notice was issued, and on September 24, 2014, Plaintiff filed an Answer to Defendants' Motion to Dismiss.

## II. Contentions of the Parties

### A. The Complaint

The Plaintiff alleges that "Dr. Proctor refused to provide treatment and knowingly withheld my medical condition by conducting ineffective test. Dr. Proctor falsely reported my medical condition. Dr. Proctor left me to suffer pain. Dr. Proctor kicked me out of his medical department for asking questions about his misconduct." (Complaint, ECF No. 1 at 7). With respect to Mr. Tenney, Plaintiff alleges that he "repeatedly advised me to stop complaining about being mistreated and did nothing to stop Dr. Proctor from mistreating me. Mr. Tenney reported known false information about my medical treatments to the DOC authorities investigating my claims. He repeatedly charged me for

the same condition even though he was aware I was not being treated." (ECF No. 1 at 8). With respect to Debbie Hissom, Plaintiff alleges that she "knowingly enforced a policy which allowed multiple constitutional violations to exist and done [sic] to change the policy when it was brought to her attention." (ECF No. 1 at 8). Aside from naming Mark Baker as a doctor employed by Wexford Health Sources, Plaintiff never mentions Dr. Baker in either the body of his complaint or in the memorandum filed in support of the complaint. For relief, Plaintiff seeks injunctive relief, declaratory relief and monetary damages.

**B. Motion to Dismiss by Defendants Dr. Proctor and Tristan Tenney**

In support of their Motion to Dismiss, these Defendants assert that Plaintiff's complaint should be dismissed for failure to allege facts sufficient to state a claim for deliberate indifference. In addition, these Defendants allege that to the extent Plaintiff seeks to establish a claim of medical negligence, he has failed to comply with West Virginia's Medical Professional Liability Act.

**D. Plaintiff's Response to the Defendants' Motion To Dismiss**

Plaintiff maintains that the medical request forms which he attached to his complaint demonstrate that he repeatedly complained to the prison medical unit about the same medical condition for quite some time. Plaintiff maintains that despite informing the medical unit about his condition, he was repeatedly not placed on the list to see the doctor and was ordered to come back to nurses sick call and charged $3.00. This occurred even though no legitimate steps were taken by Defendants to identify his medical condition and treat it. As a result, Plaintiff maintains that he continues to suffer unjustifiable pain. Plaintiff also maintains that he repeatedly went to the medical unit's "nurse sick call" and asked to be placed on the schedule to see the doctor. Plaintiff maintains that on most of these occasions, he was never seen by Dr. Proctor, but instead was seen by a nurse

or physician's assistant who ordered X-rays, blood tests and other ineffective procedures in a cycle that repeated over and over and that no steps were taken to identify the problem or treat his pain. Finally, Plaintiff argues that because he continues to complain of pain, and the equipment available to Defendants has proven to be ineffective to identify the source of the pain, Defendants failure to take further steps to identify the source of such pain is a clear showing of deliberate indifference.

### III. Standard of Review

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions or "a

formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 1949.

### IV. Analysis

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's

5

attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[2]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip condition that caused a prisoner "great pain over an extended period of time and . . . difficulty walking" is a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) Beaman v. Unger, 838 F.Supp. 2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) *report and recommendation adopted,* 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991).

drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

**A. Dr. David Proctor, Tristan Tenney**

A review of the DOC website establishes that Plaintiff was sentenced in the Circuit Court of Raleigh County in two separate criminal actions. Both criminal cases charged Plaintiff with the Manufacture/Deliver of Schedule 1, 1i, 1ii Controlled Substance. The sentencing orders were entered on February 15, 2001, and October 11, 2001. Plaintiff's memorandum in support of his complaint indicates that he arrived at Huttonsville Correctional Center ("HCC") from Mount Olive Correctional Center ("MOCC") in or around September of 2010. According to the memorandum,

Plaintiff had been suffering from severe pain in his lower left abdominal area while at MOCC. Upon arriving at HCC, he immediately reported his symptoms to the medical unit. Plaintiff notes when he spoke to Dr. Proctor, he advised him that he already had been given multiple x-rays and blood tests by the medical unit at MOCC in an unsuccessful effort to identify the cause of his pain. Although Plaintiff appears to believe that repeating those tests was useless, he acknowledges that Dr. Proctor ordered additional blood tests and x-rays.

Thereafter, on December 18, 2010, Plaintiff submitted an Inmate Medical Services Request indicating that he was experiencing an ongoing problem. Specifically, he indicated that his pain was spreading to the lower left side of his back and his bladder. Plaintiff expressed his opinion that he might have cancer. (Plaintiff Rogers and Daye's Mem., ECF No. 13-1, at 9, Appx. L). On December 21, 2010, the medical unit replied that he needed to resubmit his request and put it in the box because medical requests could not be taken through the mail. (Id.).

On April 1, 2011, Plaintiff sent another Inmate Medical Services Request indicating that he still had pain in his side which he believed to be cancer. He noted that the doctor took an x-ray but never followed up with any diagnosis. In reply, he was told that his request would be submitted for doctor review. (ECF No. 13-1, p. 9 Appx. M).

On July 29, 2011, Plaintiff sent a "memo" to Dr. Proctor in which he wrote:

> Upon arrival to this institution, I advised Doctor Proctor that I had pains, which seemed to originate from my left testicular area extending to my left abdominal on around to my lower back. I also advised that this problem had gone on for quite some time before arriving to this institution and that it is gradually getting worse.
>
> As a result of my complaint[,] both the doctor at Mount Olive and Doctor Proctor has[sic] proscribed antibiotics and taken x-rays with the common x-ray machines available at the respective institutions. Consistently the antibiotics had no effect and the x-ray has not helped

8

> to identify the source of my injury.
>
> At this time I am worried that I have either cancer or some sort of kidney or testicle infection which could potentially be life threatening. It is also obvious that antibiotics is not helping and that a common x-ray is ineffective in finding the source of my pain.

(ECF No. 13-1 at 10 ). It is unknown what response, if any, Plaintiff received.

On October 3, 2011, Plaintiff filed an Inmate Grievance Form. It is not clear what he alleged as his complaint because he did not include the attachment noted on the grievance. However, on October 26, 2011, the Central Office remanded the matter to HCC for an amended decision from the Warden to contain a statement from the medical unit addressing two questions: 1) Does the inmate have a serious medical need, and if so; 2) How is the medical unit addressing these needs? (ECF No. 13-1 at 11, Appx. N).

Dr. Proctor sent a letter, dated October 27, 2011, to Commissioner Rubenstein which stated the following:

> Mr. Cornell Daye has apparently filed a complaint about his medical care at Huttonsville Correctional Center. Following is the answer to questions presented in the note from Warden Adrian Hoke dated 26 October 2011. The medical department, after a thorough review of all available records, is <u>not</u> aware of any "serious medical needs" regarding Mr. Daye.
>
> As far as addressing his needs, each one, although none has been 'serious', is handled on an individual basis at nurse sick call or doctor call. The issue seems to be, based on his complaint dated 29 July 2011, that he's concerned that he may have 'cancer,' or a condition that could be 'life-threatening.' Mr. Daye, however, has no physical signs, or evidence on any blood test or x-ray that he has anything serious wrong at all. Based on his complaint, he prefers to think that his non-serious medical issues can be "life-threatening" despite being examined and told otherwise, by multiple providers at different sites.
>
> All his medical complaints, since being at Huttonsville Correctional Center from oldest to most recent, are:

9

> 1. Wants 'no milk' diet.
> 2. Sprained ankle in gym.
> 3. Feet are dry; achy back.
> 4. Nosebleed.
> 5. Constipation, hemorrhoids.
> 6. Hemorrhoids.
> 7. Constipation.
> 8. Wants fiber pills.
> 9. Rash on neck.
> 10. Urinary tract infection.
> 11. Abdominal pain.
> 12. Hemorrhoids, wants high fiber diet, wants pass so he can eliminate shaving.
>
> It should be noted that our administrator, Tristan Tenney, has encouraged Mr. Daye to seek medical care by making physician appointments, yet Mr. Daye last requested a physician appointment to check anything on 14 January 2011.

(ECF No. 13-1 at 10).

While his grievance was making its way through the administrative remedy process, Plaintiff filed an Inmate Medical Services Request on October 17, 2011. In it he noted that he continued to have pain in his abdomen and stated that he needed to see the doctor. He specifically requested that he not be placed on the list to see the nurse again for this problem. The medical unit responded that he must come to nurses sick call and request a doctor's appointment because doctor's appointments were not made through requests. (ECF No. 13-1 at 11, Appx. O).

After Warden Hoke prepared an Amended Decision denying Plaintiff's grievance, Plaintiff filed another grievance on November 4, 2011. After reciting parts of Dr. Proctor's October 27, 2011, letter set out above, he complained as follows:

> Based on the above representation of my medical history by Doctor Proctor which led to his assessment that I do not have any serious medicals need, I submit this grievance alleging that Dr. Proctor has misrepresented my medical history in this matter.

10

> I've been to medical at least four times wherein I specifically complained to the medical department about kidney complications and abdominal pains. On no occasion since being an inmate at Huttonsville have I complained to medical about any alleged hemorrhoid problems or constipation difficulties nor has medical provided any treatment for the same. Other than the minor problems listed above by the Doctor I've consistently complained about abdominal pain and kidney complications. Although the medical unit may have listed my problem as a urinary tract infection my actual complaint was kidney complications.
>
> Finally, the doctor further supports his findings by stating that the last time I requested a doctor's visit was January 14, 2011. I asked that a full investigation be conducted into the veracity of the doctor's findings, in as much as I currently have in my possession copies a specific request made to the medical department concerning abdominal pains on April 1, 2011, October 9, 2011, and again on October 17, 2011. On each of these occasions I specifically complained about my abdominal pains and requested to see the doctor. I then followed up with a visit to nurse sick call and made verbal requests to see the doctor. At no time did the doctor see me after making these requests.

(ECF No. 13-1 at 12).

Defendant Tenney responded to this grievance by stating that "[no] new answers offered. You only repeat previous question and subsequent answers. All previous answers given are true. You need to stop complaining and writing, and go to the nurse call and ask for a doctor's appointment if you need evaluated, as you have been instructed." (ECF No. 13-1 at 13).

On June 11, 2012, the Plaintiff submitted another Inmate Medical Services Request. In it he indicated the reason for his request was that "[he] [was] not happy with the way medical has dealt with my medical complaints. May I make arrangements to get an MRI and pay for it myself [?] (ECF No. 13-1 at 13, Appx. R). In response, Defendant Tenney noted that Plaintiff had not been to nurses sick call since December 2011. Accordingly, Plaintiff was told that if he was having issues, he

should go to nurses sick call. Furthermore, he was told that if he needed an MRI, the medical unit would see that he received one without cost to him. (ECF No. 13-1 at 13, Appx. S).

On December 14, 2012, Plaintiff filed another Inmate Grievance Form. The attachment to said grievance, states as follows:

> In late September 2012 I began to get painful itchy blisters on my hands, ankles, feet, knees and elbows. To this day I do not know the cause of the blisters.
>
> Since September I have been going to medical nearly every week in order to identify the cause of my blisters and to get something to treat the blisters.
>
> The first week I was given CTM's for the blisters. However, no action was taking by the Doctor to identify the ailment, through biopsy, swabbing, or other standard medically accepted practices to identify skin disorders.
>
> The second week I was given antibiotics which also did not work. This time the doctor refused to see me. Again, no action was taken to identify the ailment through the named standard medically accepted practices. The itching and burning pain became worse and sores spread covering nearly my whole body (at least 90%).
>
> The third week I was given some type of cream which had to be rubbed on my body and held for 9 hours. However, no action was taken to identify the actual problem.
>
> Finally, the PA gave me a medication called visceral ( )[3] that helped the itch. However, no steps were taken to identify the ailment in order to prevent the same from reoccurring in the future.
>
> Because the medical department's current policy failed to identify or attempt to identify my skin disorder in the first instance, I had to suffer serious itching and burning for approximately two months, while the doctor refused to see me in person. The PA therefore essentially experimented on me by providing me several medications which did nothing to relieve me of the ailment. Please

---

[3]Plaintiff has written something within the parenthesis which is not legible.

    look into this matter as soon as possible.

(ECF No. 13-1 at 14).

  Mr. Tenney responded to this grievance by stating: "you are evaluated for any causes of "itch" during your medical visits. Not all cases of itch require cultures or biopsies. If any special testing becomes necessary, the doctor will order it." (ECF No. 13-1 at 14).

  On January 28, 2013, Plaintiff filed another Inmate Medical Services Request. In it he noted the reason for the request was that the pain in his abdomen was getting worse and he was beginning to get a bloody discharge in his underwear from his stomach. In response, he was told to come to his nurses' sick call. (ECF No. 13-1 at 15). On April 8, 2013, Plaintiff filed another Inmate Medical Services Request. In it he noted that he had gone to the medical unit over two weeks ago about his intestinal pain. He also noted that the doctor still had not seen him nor had he been treated in any manner for the pain. In response, Plaintiff was again told to come to his nurses' sick call. (ECF No. 13-1 at 15). On April 24, 2013, Plaintiff filed an Inmate Medical Service Request in which he advised the medical unit that he was still having intestinal pain and the laxative given to him by the PA had no effect on the pain. Plaintiff concluded by noting that he needed a follow-up visit to be scheduled. In response, he was told to come to his nurses' sick call and schedule an appointment. (ECF No. 13-1 at 16, Appx. V).

  On May 3, 2013, Plaintiff filed a final grievance before initiating the instant action. In the attachment, he stated:

> On May 3, 2013, I went to medical for a scheduled appointment. I saw [sic] Doctor Proctor about an ongoing pain in my intestinal tract. The pain is concentrated on my left side. The side effects of the pain are (1) chest pains, (2) poor bile [sic] movements, and (3) frequent urination.

> During my visit to see Doctor Proctor, Proctor [realized] that he knew what was wrong with me. He explained that I needed another round of x-rays. I told him that I had multiple x-rays that did not show anything, and that excessive x-raying is dangerous to my health. He then asked me whether I was refusing to cooperate with his treatments. I said I was not refusing treatment, but I wanted to know why we kept taking x-rays when we know it does not assist in locating the trauma. Doctor Proctor then kicked me out of the medical unit and told me not to come back to medical. It is my belief at this time that the medical department refuses to take medically accepted steps to identify and treat my internal pain.

(ECF No. 13-1 at 16, Appx W.).

In response to Plaintiff's grievance, Defendant Tenney stated that physicians order tests to help determine if a patient is having a medical problem. He also noted it was Plaintiff's responsibility to cooperate with the doctor's recommendations. Tenney noted that Dr. Proctor ended the interview when Plaintiff made it clear that he was not interested in cooperating. Plaintiff was told to return to nurses sick call if he needed further treatment. (ECF No. 13-1 at 17, Appx. Y).

The litany of medical requests and grievances cited above fails to establish that Defendants acted with deliberate indifference to Plaintiff's medical needs. Rather, it appears that Plaintiff's complaint that he has not been examined by Dr. Proctor as often as he believes was necessary, stems from his own failure to follow the protocol established by the medical unit at HCC. Specifically, Plaintiff attempts to request doctor appointments through Inmate Medical Service Requests when he had been repeatedly told that he must go to nurses sick call and request an appointment. Although not admitted by Plaintiff, it appears that he objects to going to nurses sick call because he is charged $3.00 for each such visit. Moreover, to the extent that Plaintiff opines that he may suffer from cancer, testicular problems or kidney issues, he offers nothing beyond his own "self diagnosis" to support those opinions. Plaintiff's uninformed opinion does not overcome Dr. Proctor's medical

opinion that he does not suffer from any serious medical condition.

There is simply nothing credible offered by Plaintiff to establish that he was treated inappropriately. He acknowledges that he has received x-rays, blood tests, antibiotics, laxatives and skin cream. Although he apparently believes that an MRI is warranted for his abdominal pain and a biopsy or culture should have been taken to determine the cause of his rash, such belief is irrelevant.

"The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves...." Ruiz v. Estelle, supra, 679 F.2d at 1149. "[T]he essential test is one of medical necessity and not one simply of desirability." Woodall v. Foti, 648 F.2d 268, 272 (5th Cir.1981) (citation omitted). Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). "[A]lthough it is plain that an inmate deserves **adequate** medical care, he cannot insist that his institutional host provide him with the most sophisticated care that money can buy." United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987)(emphasis in original). Furthermore, the medical care required by Estelle need not be the best possible care, it only has to be"reasonable" care. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977); see also Blanks v. Cunningham, 407 F.2d 220 (4th Cir. 1969); Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966).

In summary, although Plaintiff has routinely complained of pain in his side since arriving at HCC, the record contains the opinion of a medical professional that the Plaintiff does not suffer from any serious medical condition. To the extent that he has not seen the doctor as often as he would like is a result of his own failure to follow the protocol set by the medical unit at HCC. Moreover, the majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care, i.e. "no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir. 1991), *cert denied*, 502 U.S. 960 (1991). Here, even

if the undersigned concluded that Plaintiff received "bad care," which he does not, Plaintiff did receive care. Accordingly, there is simply nothing to support a claim of deliberate indifference on the part of Defendants Proctor and Tenney and Plaintiff's Eighth Amendment claim against these Defendants[4] should be dismissed.

In addition, to the extent that Plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. <u>Banfi v. American Hospital for Rehabilitation</u>, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or

---

[4] Although Debbie Hissom has not filed a responsive pleading, the undersigned notes that Plaintiff's complaint alleges that Hissom knowingly enforced a policy which allowed multiple constitutional violations to exist and did nothing to change the policy once it was brought to her attention. Because the undersigned has concluded that Plaintiff has failed to establish a constitutional violation, Hissom should be dismissed as well.

16

theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[5]

With regard to the appropriate standard of care, Plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of abdominal pain or skin rash. Under the circumstances of this case, Plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' breach of the duty of care. Moreover, there is nothing in the complaint which reveals that Plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, even if this court has supplemental jurisdiction over Plaintiff's potential state law claims for medical malpractice, summary dismissal is appropriate.

### E. Dr. Mark Baker

---

[5] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

To date, the U.S. Marshal Service has been unable to serve Dr. Baker. Rule 4(m) of the Federal Rules of Civil Procedure provides that, "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). It has now been more than sixteen months since this complaint was filed. The undersigned has no reasonable expectation that Plaintiff will be able to provide an address at which Dr. Baker can be served. Therefore, this Report and Recommendation should serve as notice to Plaintiff that Dr. Baker will be dismissed as a defendant.

## V. Recommendation

For the reasons stated, the undersigned hereby recommends that the Defendants' Motion to Dismiss (ECF No. 34) be **GRANTED** and Plaintiff's complaint (ECF No. 1) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to

counsel of record via electronic means and to counsel of record via electronic means.

DATED: 2/03/2015

_Robert W. Trumble_
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE